court. This case is about whether a criminal defendant has the right to communicate with counsel during the course of a guilty plea. Now our position in this case is had my client been allowed to talk to his counsel during the course of his plea colloquy, there would not have been an appeal, there would not have been a trial, and there wouldn't have been a life sentence in this case. Now there are two assignments of error on appeal. The first is whether or not the district court violated my client's right to counsel when he prevented my client's attorney from participating meaningfully in the hearing and prevented my client's attorney from speaking with with Mr. Juarez during the course of the plea colloquy. Our position... You mean in private? Yes. I mean there was nothing to prohibit him from just turning to his client there during the colloquy and talking to him? Actually, I think, your honor, that the record is quite clear that there wasn't an opportunity for him to do that. The judge was questioning my client quite vigorously and my client understandably was trying to respond to the judge and it's hard to explain the dynamics of the courtroom. Courtrooms are different, different situations are different, but I think the record in this case is clear that there was no opportunity for my client and his trial lawyer to communicate during the course of the hearing. Well the court actually offered him a recess at one point, did he not, Judge Ellis? That's correct, your honor, and I think that... The court said do we need a brief recess and then counsel didn't say yes, he just said I believe the distinction is the word transport and Mr. Juarez has difficulty distinguishing. So the court afforded him the opportunity at that point and it looks like counsel declined it. Your honor is absolutely right that the court at that point offered him the opportunity to speak with his with his client. However, a couple points here. One, the fact that he didn't take the opportunity at that time doesn't mean that he waived the hearing. The way I see the record, Mr. Juarez's attorney thought that he could resolve this issue by explaining the issue to the court and he tried to do that twice and what actually happened after he did state what your honor just quoted regarding Mr. Juarez's problem with comprehension, the court then didn't really respond to that problem. The court continued to press Mr. Juarez regarding transportation, whether he transported the victim in this case and I think counsel made a judgment at that point that he could resolve this issue by talking with his client in private and he was prevented from doing that. I mean he wasn't, he was impliedly prevented from doing that. He never had a chance to talk to him. Now the government takes the position that this is not a de novo issue and we respectfully submit that the government is wrong on that point. Okay, before you get to that though, why wasn't it up to the defense counsel to ask the court to rule on the second request for a recess? Looks like counsel said may I have a five-minute recess and the court not responding said you can't accept the charge and plead guilty in this court unless you actually transported this young woman and then counsel kind of drops the idea of a recess. Why isn't it incumbent upon counsel not just to suggest it but to say your honor I'm asking the court for this, I'm asking the court to rule on this. Your honor, I think in terms of preserving this issue rules 51 is fairly clear. I think once the counsel asked for the recess and the judge effectively ignored him, again it's hard to recreate or imagine the dynamics of that courtroom but the way I read the record the judge clearly was saying no by by not answering that question and continuing with the judge's own statement and I think that in terms of rule 51 the error is clearly preserved because he asked for it and he impliedly was denied. I don't think it's incumbent upon him to keep repeating to keep repeating what the relief that he was requesting and furthermore I think it's pretty clear from this record that the judge was somewhat agitated by this point in the hearing and counsel it might have been obvious to counsel that it would have been pointless to continue to Now with respect to the to the standard of review on this point we sharply disagree with the government. We believe that the Smith case is definitive is definitive with respect to this issue in that the Smith case says that with respect to the question of whether counsel whether effective counsel was or wasn't available the appropriate standard of review is de novo. The government wants to cast this as a continuance issue but it's really not. What this really is is a question of whether a defendant can briefly talk to his lawyer in the course of a critical proceeding in the process and I think the the Smith case answers that question definitively and I think the Smith case also very clearly explains what defines a functioning attorney-client relationship and the way the Smith court explains that is that communication is the benchmark of an attorney-client relationship. The client doesn't have legal knowledge but the client understands the facts and the client has the right to make decisions. His attorney has the legal knowledge and the ability to speak on his behalf and from this record I think it's clear that Mr. Juarez didn't basically didn't have counsel in this case because counsel wasn't allowed to advocate his client's position. Counsel wasn't allowed to make a record really on behalf of his client and effectively it's as if as if he wasn't even there and given that given that course of events our position is that this the completeness of the absence of representation in this case should should be viewed as a structural error and when a structural error occurs in this context prejudice is presumed but if this court is not willing to to take a view that this is a structural error we believe that the prejudice in this record is clear. First of all the prejudice is that the counsel didn't have an opportunity to make a record on behalf of his client before we ever get to the other consequences of his inability to talk to his client. Secondly there is no record I'm sorry I There's certainly a reasonable probability of a different outcome in this case because as as any experienced attorney knows unforeseen circumstances come up in the course of hearings all the time and we're able to talk to our clients we're able to calm our clients down we're able to understand our clients position and explain it to the court in a way that could resolve the problem and what the Mr. Juarez's attorney would have had to do in this case wouldn't have been as the government suggests to move heaven and earth. Mr. Juarez's attorney could have resolved this problem in any number of ways. One he could have proffered the facts that would have satisfied the court that Mr. Juarez transported the victim. Two he could have had Mr. Juarez proffer those facts himself. Three he could explain he could be if given the opportunity explain the problem to the court in some detail so that the court could ask the right questions. Now the government cites in its brief case called Hernandez Rivas as an example of a case where someone categorically denied an element of the offense and I would say that first this case is substantially different from that case because Mr. Juarez was denying the word transport but if he were questioned further he would have it would have become clear that in fact he did certainly aid in a bet in the transportation of this victim and I think Hernandez Rivas is actually a good example of the proper way that the court should have gone about conducting the plea colloquy in this case when counsel alerted him to the fact that Mr. Juarez doesn't comprehend the term transport and I just like to make a brief note here I don't think it's a it it's just merely an argument that a defendant like Mr. Juarez wouldn't understand a legal concept like transport let me ask you this question when I would take guilty pleas as a trial judge I'd be talking to the defendant and I'm trying to make sure he understands what his rights are try to make sure he understands that what he's accused of and to make sure he understands that and and admits that he's guilty of the crime with which he's charged and I'm asking him questions and when I get to questions about do you understand you know did you do what you're accused of and he starts to equivocate with me you know and he starts to hedge what I would have happened a lot of time the lawyer would say let me talk to him a second the lawyer would pull him aside and then he come back say yes I'm guilty and answer my question correctly and always made me nervous as to what they talked about because I was always worried that the defense the lawyer may just say to just say yes and he comes back up there and he says yes and I was never comfortable questioning the defendant what did your lawyer tell you I never did that but it always made me nervous because I don't know what didn't know what the lawyer was telling him when he pulled him aside spoke to him in private and then he came back and the defendant answers my questions correctly what is it what is the judge to do when this situation occurs and the defendant is equivocating as to the guilt of the charge to which he's pleading guilty what's what's the judge to do when equivocates and the lawyer wants to talk to him in private I think that the judge certainly has an obligation as your honor explained in an important one to make sure that the defendant admits to facts the law is that the defendant has to admit to facts that would amount to satisfying each of the elements of the offense the court is certainly right that the court has a role an important one to do that I think the best case that illustrates this is I'm just asking practice you would say the defendant has a right constitutional right to stop the proceedings and consult with his lawyer absolutely your honor because first of all considering the dynamics of the situation for most criminal defendants this is the scariest day in their life and the courtroom is a very intimidating environment and for them to understand a legal concept such as transport and aiding and abetting and the breadth of that concept a person with a could very reasonably think that to transport would be to drive a vehicle it's it's a very reasonable understanding and my in your exit in your honors example what I would tell my client is remember what I explained any of the following things could be transport please tell the judge what you did and I certainly wouldn't have him not tell the truth but I would have the judge I would have him tell the judge affirmatively what he did and I think the Maddox case from DC actually illustrates this point because they're in that case the defendant came up before the court and and the judge said did you sell these drugs and the defendant says no I didn't and then later the defendant asked for a new plea hearing and in his letter to the court he explained I didn't sell the drugs myself but I did acts that certainly qualify as aiding and abetting and I think that's the challenge we face is that our when our clients are being grilled the way that mr. Juarez was clear on that he was being grilled by the judge and he was being left to fend for himself I'm not saying judge Ellis intended to do anything wrong I think judge Ellis intended to ensure that that this plea was going to be valid and that it was going to hold if mr. Juarez ever appealed it but but you know we've got case all that says if the lawyer tells the client something wrong that's incorrect he can get the plea vacated and so what I'm saying is you could have a situation where the back in front of the judge and answers the question the way the judge you know that wouldn't that would allow the judge to proceed with a guilty plea and there's no way to the judge to protect himself so to speak to make sure that then it really understands what he's pleading guilty to admitting guilt I understand your honor's point I have a few seconds here left if I may just briefly answer I think in that situation and I think what mr. Williams wanted to do was he wanted to get on the record what mr. Juarez was willing to admit when he was being questioned by judge Ellis he was saying a lot of what he didn't do because he got defensive but in that situation if he clearly stated on the record what he did do we would have a clear record as to whether that constitutes transporting or aiding and abetting and transporting thank you judge let's hear from the government good morning thank you may it please the court Patricia Giles on behalf of the United States the defendant presents his argument as if the court rejected this plea as a rush to judgment and as if the court chose expediency is in the sense of moving his docket along instead of looking at the defendants rights in terms of our ability to enter a plea and that's just not the case here first of all judge Ellis is very experienced and well regarded and is known for being very thorough and careful and that's exactly what he did in this plea colloquy he wasn't rushing he spent a lot of time asking this defendant questions not only about his background but about the terms of the plea to make sure that he understood and at the outset of it of the entire plea colloquy he explained I'm gonna ask you a series of questions and my focus is to make sure one that this plea is knowing involuntary and two that it's supported by a factual basis because in this court you can't plead guilty unless you did what you're pleading guilty to that's at pages 35 and 36 of our joint appendix so from the outset the court let this defendant know what it's what his purpose was and the reason that this plea fell apart was because the defendant was denying his guilt this was game and shit and it started not just at the plea colloquy it started before the plea colloquy because as it's alluded to in the joint appendix when we were on the day of trial then before Judge O'Grady was that the statement of facts the one that he stood up before Judge Ellis and said was not true was the statement of facts that the defendant negotiated but yet when he gets before the judge he says well when the court and the defendant understood all of Judge Ellis's questions even what the ones that were compound he understood and followed along because counsel indicates that he had a seventh grade education but what he told the court was that he had an education equal to ten years in the United States and that he also did air conditioning work which is a technical skill which requires some ability you know some amount of intelligence and education and the defendant understood all of Judge Ellis's questions but when he got to the question about the statement of facts and with the plea agreement it was a reflect the terms of your plea agreement yes to both questions when he got to the statement of facts is that your signature on the statement of facts and is it true inaccurate excuse me that was what the defendants response was Judge Ellis repeated the same question the defendant said well that's my signature and it was translated for me and when Judge Ellis said I want to know if it's true and accurate the defendant said well supposedly for the agents that are accusing me and Judge Ellis said I want to know what you say well it's not the truth the whole reason that we were before the court was for a plea agreement that by signing it ahead of time the defendant said this plea agreement is supported by this statement of facts and it is accurate and true but when he got to court he said it wasn't accurate and true and there began the unraveling Judge Ellis still and and counsel now says that at the time of the colloquy that the attorney didn't have a chance to speak with his client he may not have been able to speak with him in private but he was standing side-by-side and at certain points he did whisper something to him and so he did have the opportunity to consult with his attorney at any point he had the opportunity to consult with him well before the plea because it's also stated in the in the adjoining penance that they went by the plea agreement and statement of facts line by line and as I stated this is the same statement of facts that he helped negotiate when Judge Ellis then began asking him specific questions about the then the underlying facts that's when the defendant also denied his guilt when the when that judge asked him did you do what's charged in count two he said well I was there that is not an omission of guilt then the judge went on to say well tell me in your own words exactly what you did Judge Ellis explained that twice counsel argues well if he had been given the opportunity to ask what he did that he could have explained but Judge Ellis gave him many opportunities he asked the questions in a variety of ways he asked the general questions about tell me in your own words what you did he asked him that twice at pages 61 and 62 of the joint appendix he asked him did you do what's charged in count two that's when the defendant said I was just there when Judge Ellis then asked him and pointed him to specifically the statement of facts when they were talking about the December car trip he said were you in a car with this girl on December 6th or I'm sorry in December the defendant said yes but at that time and he began to then minimize his conduct what he said we were only there that time only I and a friend of mine we only went to pick her up with another friend of hers that day we only went to pick her up but then after we picked her up with the other guy two blocks further ahead the police stopped us so that's what's happened and that's why I was there at that moment well that's not what happened and judge and first and first of all that question wasn't even responsive to the what the judge asked because what the judge asked was first were you in the car and then his next question was what was that girl there for and as I stated every other response the defendant had ever given in the time of that colloquy was responsive to Judge Ellis's question but there he sidestepped it because he didn't talk about what the girl was there for he talked about him and a friend going to pick her up and Judge Ellis picked up on that as long as well as all of these other times where he did not accept and acknowledge what he did this was just not about the distinction between drive and the word transport because even here in this excerpt he's talking about we picked her up we picked her up it's not just about him driving the car or whether he didn't drive the car and then judge Ellis asked other questions did you participate at all in transporting this girl because that would have captured arranging the ride which he did on numerous occasions that would have also talked to capture the bus trips that he went on with this girl in order this 12 year old in order for her to prostitute he didn't admit it there either and then at the end and finally at the end judge Ellis asked did you not using the word transport even did you take this girl with another person with did you with another person take this girl somewhere to for the purpose of her engaging in prostitution and what did the defendant say that's what I said but it's not true so we've given this record and all of these repeated denials of this defendant there's there was no factual basis upon which to accept this plea in terms of the five-minute recess just because counsel cast this as a denial of the right to counsel argument doesn't make itself judge Ellis was not denying mr. Warris his right to counsel as I stated he had the opportunity to confer with him prior to the plea during the course of the plea and then after the plea this colloquy wasn't on the day of trial it's three weeks before he still had every opportunity to go back to judge Ellis judge Ellis gave in a sense because perhaps a plea is the scariest day of the defendant's life and maybe these are the kinds of discussions you should not have with your counsel in just a five-minute break but something that could happen over the course of days and that's what they then had the opportunity to do but the reason there was never a going back for to have this plea entered was because he never got to the point where he could accept responsibility for his conduct does a defendant have a constitutional right to consult with his lawyer in private during a rule 11 colloquy not always your honor are you saying sometimes he does sometimes he has a constitutional right sometimes you know I don't want to answer the question incorrectly but I will say this I think there's under these circumstances I would say no what is your answer generally speaking is there ever a situation where a defendant has a constitutional right consult with his counsel in private during a rule of no that would no and especially under these circumstances your honor where with three weeks before trial they had every opportunity to consult after the fact he was not denied a right to counsel this was about in for judge Ellis was proceeding in the most prudent and careful way not only to protect the record but to protect the rights of this defendant to make sure that he knew and completely understood exactly what he was doing and the defendant had every opportunity to do so and the fact that he was denied the benefit of pleading guilty in saving himself worth from a life sentence was due to his own conduct not any else I want to correct counsel alludes to the fact that he didn't have the same plea offer counsel wasn't part of those discussions before below count three came into play on the day of trial our negotiations and discussions in relation to the original plea offer continued so there was he could have placed himself in the exact same position he chose not to do that and now he has to live with those consequences I think this was game and ship on his part because even before trial and one of the witnesses against him was his girlfriend and he spoke with her on the phone prior to the trial and told her you're the only witness against me don't come when I'm looking at page 64 of the transcript the defense attorney says may I have a five-minute recess and the judge never responds to that how do you would you characterize the lack of response by the judge is it a denial is it refusal to rule is it an indication he didn't hear which what's the government's position on why there was no response made to that question I don't I'm not even sure at that point judge Ellis heard the defense attorney or not because the court reporter heard it you didn't hear my question the court reporter heard this I'm sorry why wouldn't we presume the judge heard it if the court reporter perhaps because the only reason I say is because he didn't respond and typically I think judge Ellis would respond to a to a question from counsel like that but also your honor I would say even if you take it as a as a as a denial of his request for a of a continuance under these circumstances where the defendant has denied you know at this up at this point it was four or five times he's saying that the very statement of facts he's there before the court on is untrue I think and it was just what the court was alluding to in your question to allow them to talk for five minutes and then come back and then everything is cleaned up it's just inviting you know a problem with that plea and a question of whether or not it was truly knowing involuntary unless there are further questions from the court I will very briefly your honors I'd like to address the government statement regarding what was the offer that was stayed open after this plea didn't work out and I think the record is far from clear on this point and I think that if counsel wants to make a proffer about what happened in the court below and what happened in the in the course of negotiations between the defendant and the government then I'll make a proffer that my understanding of the situation was after this plea the government's position changed drastically while they were technically keeping count to open the consequences of pleading to that count were not the same so the government's point regarding coming back within the next three weeks is not I don't I don't think that the record supports it and the court should not take that into account secondly I think the government implies just in its last point that if mr. Juarez had an opportunity to talk to his attorney something untoward would have happened and I think that that is not a and I don't think it's fair to presume that he would do something improper I think that if anything in that situation any attorney in that situation would would proffer truthful facts that would satisfy the elements of the offense situations where what the lawyer tells them is something the lawyer honestly believes and it's trying to fill his ethical responsibility he's just wrong it wrong on the law you could certainly be wrong on the law your honor there's no question about that but I think that what the point the government raised is that there would be some improper statement dishonest statement and I don't think that's fair to the two mr. Williams the main point here and the overarching point is whether mr. Juarez had counsel at this hearing or not and I think the record is clear and the context is clear that effectively mr. Juarez didn't have counsel he might as well have not showed up that day because he couldn't talk to him counsel couldn't intercede to on behalf of his client and when he did try to intercede he was basically ignored by the court the court didn't engage him at all and that's this that's the threshold questions did mr. Juarez go to this hearing without a lawyer and I think the record shows that in fact even though his lawyer was a warm body as this court quoted in Smith he wasn't much more than that and it wasn't because he wasn't trying it was because the judge wasn't letting and and that's and and in that situation prejudice should be presumed because that's a structural error thirdly regarding the government's points about mr. Juarez's denials on page 62 of the joint appendix mr. Juarez says I'm guilty I was there I'm guilty and I think that the government wants to say that he was categorically denying his conduct let's not forget that mr. Juarez three times during the course of the hearing insisted even when the judge was prepared to close the hearing down insisted that he wanted to have his plea accepted by the court and he made the statement I was there I'm guilty and if one looks carefully through the record I don't think he categorically denies any element of the offense when the only thing he categorically denies and clearly denies is driving a vehicle but that's not even necessary to meet the element of to the questioning of the judge had an opportunity to make a statement regarding what it was he really did had an opportunity to understand from his counsel what he needed to do to have his plea accepted I don't think we would be here today and my very last point your honor is that regarding this five-minute recess again I'd reiterate it the recess was necessary because he couldn't otherwise talk to his client so I think when the government tries to couch this as a question of a continuance or something like that that's just simply not accurate and I think the analysis in Smith makes clear that we first start with the question of was there effective assistance of counsel that's a de novo issue and then we work backwards to did the court abuse it's just did the court therefore abuse its discretion and not in that situation appointing a substitute counsel in this situation granting a recess and I think the first question certainly has to be answered that he didn't have effective assistance of counsel at that hearing if there aren't any further questions your honors I'll conclude okay thank you thank you
judges: William B. Traxler, Jr., Barbara Milano Keenan, Stephanie D. Thacker